The **CHURCH OF SCIENTOLOGY OF CALIFORNIA** a religious corporation, and **Reverend Robert H. Thomas, Plaintiffs,**

v.

**DELL PUBLISHING CO., INC., a New York corporation, and George Malko, Defendants.**

No. C–70–2089.

United States District Court,
N. D. California.

Aug. 3, 1973.

As Corrected Sept. 17, 1973.

Robert B. Ingram, Belli, Ashe, Ellison & Choulos, San Francisco, Cal., for plaintiffs.

John A. Sutro, Jr., Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants.

## OPINION AND ORDER

SCHNACKE, District Judge.

In this defamation action, defendants have moved for summary judgment. The Court has concluded that the motion must be denied but deems it advisable to discuss some of the legal issues for guidance in future phases of the case.

Defendants are the publisher and author, respectively, of a book entitled *Scientology: The Now Religion,* originally published in a hardcover edition, upon which the present complaint is founded, and later reissued in paperback following the commencement of this action, a point which will be discussed below. Plaintiffs are a corporation and an individual engaged in "proselytizing the religion of Scientology."

In connection with its consideration of the present motion, the Court has read the book in question. In general terms, it is a work of the expose type, its thesis being that "Scientology" is a pseudoreligion concocted by one Lafayette Ronald Hubbard, originally a science-fiction writer, but now claiming credentials as a religious founder and teacher; that Hubbard concocted Scientology primarily for commercial purposes (which have been most successfully achieved despite running battles with governmental officials in this country and abroad); and that it is no more than a hodgepodge of (1) scientific gobbledygook with borrowings from Freudian psychology, (2) other scientific and pseudoscientific sources, and (3) fantasies of the type familiar to devotees of science-fiction—all decked out in religious guise solely to attract the gullible and achieve certain hoped-for legal advantages.

Whether or not the book is false or defamatory of plaintiffs or others is not the issue before the Court; for present purposes it may be assumed to be.

The basic issue raised by defendants' motion is whether, under undisputed facts before the Court, defendants are entitled to judgment as a matter of law. F.R.Civ.P., Rule 56.

This turns in large measure upon whether the undisputed facts disclose that the publication is privileged under the rules laid down in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct.

710, 11 L.Ed.2d 686 (1964) and subsequent controlling decisions, only a few of which need be discussed here.

■ Plaintiffs at the outset argue that the privilege is inapplicable, not because the subject matter is not one of "public interest", Time, Inc. v. Hill, 385 U.S. 374, 388, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); Rosenbloom v. Metromedia, 403 U.S. 29, 41–42, 91 S.Ct. 1811, 29 L. Ed.2d 296 (1971), but because the privilege applies only to news media—newspapers, magazines, radio and television —and not to more permanent publications such as a book. Plaintiffs concede that the privilege was afforded to a book in Gordon v. Random House, Inc., 349 F.Supp. 919 (E.D.Pa.1972), apparently the only case following *New York Times* involving a book, but argue that the Court there "did not face the issue." However, in granting summary judgment for defendant, that Court necessarily assumed, although it did not specifically so state, that the book there involved was privileged under the standards of the *New York Times* doctrine.

Moreover, the distinction urged by plaintiffs is not an appealing one. The *Times* line of cases rests upon the essential freedom of public discussion enshrined in the First Amendment and not upon the form such discussion may take or the mere expediency of getting news reports to the public promptly.[1] Historically, books have played at least as vital a role in the discussion of public issues as the other media.

We therefore hold that the privilege laid down in the *New York Times* line of cases is applicable here.

The nature of, and limitations upon, the privilege are stated in the *New York Times* case as follows:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (Pp. 279–280 of 376 U.S., p. 726 of 84 S. Ct.).

The type of persons and subject matter against which the privilege applies have been broadened in later cases, so that it now applies generally to matters of "public interest". See cases cited above. But the limitations or qualifications have remained the same, and have been repeated a number of times by the Court. E. g., St. Amant v. Thompson, 390 U.S. 727, 728, 88 S.Ct. 1323, 20 L. Ed.2d 262 (1968).

It is clear that the concept of "actual malice" includes what follows the quoted term. Thus, the issue is not whether there was ill will or animosity, but only whether the defendant acted with "knowledge" of the falsity of the published matter or with "reckless disregard of whether it was false or not." Accordingly, the cases have generally boiled down to a consideration of the circumstances leading up to the publication, the investigation that preceded it and the like. In most of the cases, in fact, the principal issue is the nature, extent and reasonableness of the prepublication investigation.

The requirements of such investigation are extensively discussed in *Curtis Publishing Co., supra,* and other cases.

■ The background of the writing and publication of *Scientology: The Now Religion* is the subject of numerous affidavits, interrogatories, depositions and other matters we have considered. After such consideration, the Court is not convinced that no triable issues are presented.

It would not be profitable to review the material in detail. We shall focus

---

1. The need for speed in news reporting may bear upon the issue of investigative sufficiency. Cf. Curtis Publishing Co. v. Butts, 388 U.S. 130, 157, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), rehearing denied, 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed.2d 197 (1967).

on only one matter that is of both legal and factual importance, that of the effect the trier of the fact might give to the admitted republication of the book in paperback after defendant's receipt of a letter from one of the attorneys for plaintiffs demanding a retraction, accompanied by a signed statement of one of the persons referred to in the book (not a party hereto) denying the truth of certain statements about him in the book.

■ Defendants argue that these matters should be disregarded, since the present complaint is founded on the hardcover edition and not the paperback. But it is not claimed that the latter differed any way other than format or that receipt of the above items led defendants to make any additional investigation as to the truth of the statements made in the book. If the republication is found to be malicious, that can be evidence of maliciousness in the original publication.

The effect of republication after a demand for retraction or claim of falsity by the person allegedly defamed has not been authoritatively determined under the *New York Times* standards.[2]

In *New York Times, supra,* at p. 286 of 376 U.S., at p. 729 of 84 S.Ct., the Court said:

"The Times' failure to retract upon respondent's demand, although it later retracted upon the demand of Governor Paterson, is likewise not adequate evidence of malice for constitutional purposes."

The Court reserved, however, the question "Whether or not a failure to retract may ever constitute such evidence. . . ." (*Id.*)

In his concurring opinion in *Curtis Publishing, supra,* Warren, C. J., referred to the failure to make additional inquiries, after receipt of prepublication denials, as a factor among others supporting a jury finding of malice.[3]

■ Lower court decisions fail entirely to answer the question of retraction or republication left open in *New York Times.* Morgan v. Dun & Bradstreet, Inc., 421 F.2d 1241 (5th Cir. 1970) and Diplomat Electric, Inc. v. Westinghouse Electric Sup. Co., 430 F.2d 38 (5th Cir. 1970), relied upon by plaintiffs, were not constitutional cases, but cases involving the privilege of confidential communications to interested parties. The Supreme Court of Minnesota seems to have conflicting views. Compare Rose v. Koch, 278 Minn. 235, 154 N.W.2d 409, 428 (1967), with Mahnke v. Northwest Publications, Inc., 280 Minn. 328, 160 N.W.2d 1, 10 (1968). The better view seems to us to be that of the latter case, that prepublication denials and demands for retraction are not decisive either way, but are for the trier of fact to determine under the circumstances as a part of the overall questions of knowledge and recklessness.

The existence of this element, alone, therefore, raises a disputed issue of fact which precludes the granting of summary judgment.

The motion for summary judgment is denied.

---

2. California has adopted the Uniform Single Publication Act, Civil Code § 3425.3, and a statute pertaining to damages recoverable in retraction cases, Civil Code § 48a. But these do not bear directly, as we see it, on the present motion, which raises different issues.

3. The main opinion, by Harlan, J., ruled that the jury instructions regarding "malice", while given under a state statute dealing with punitive damages, essentially complied with the *New York Times* standards. Pp. 156–157 of 388 U.S., 87 S.Ct. 1975.