R. Spencer OLIVER, Plaintiff,

v.

The VILLAGE VOICE, INC., Defendant.

No. 74 Civ. 4105.

United States District Court,
S. D. New York.

June 28, 1976.

Berle, Butzel & Kass, New York City, for plaintiff.

Lankenau, Kovner, Bickford & Beer, New York City, for defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Defendant Village Voice, Inc., moves for summary judgment of this libel action brought by plaintiff R. Spencer Oliver. On this motion, I have before me the depositions of the principal participants in the case.

This action arose from an article written in The Village Voice by Ron Rosenbaum, then a staff writer, entitled, "What Were They Hoping to Hear on Larry O'Brien's Phone?" In examining alleged connections between former Democractic Party Chairman Larry O'Brien, billionaire recluse Howard Hughes and the CIA, the article quotes an identified "Watergate investigator" to the effect that plaintiff—earlier described as the "only other person in the Watergate whose phone is tapped"—was involved with Howard Hunt and the CIA:

> Nevertheless, according to one Watergate investigator, Oliver, Jr.'s position in the affair is more complicated than has been reported.
>
> "Oliver, Jr. was CIA. . . . He was involved in some of the NSA stuff," the investigator told me. "He may have known Hunt through the Agency or met him through his father at Mullen but they were close at one time because back in '70 Hunt had lunch with Bennett and Oliver and the three of them talked about buying into the Mullen Company. . . . But Hunt later became suspicious of Oliver, said something about the circumstances under which he left the CIA. I think he may have decided Oliver was a Communist—you know Hunt."
>
> Since Hunt was the operational director of the break-in team, it is unlikely that the decision to bug his one-time friend Oliver, Jr., was a "mistake" or an "accident." How it fit into the maze of CIA, CRP, and Howard Hughes connections in the case is still an unanswered question. Could Oliver, Jr. have been gleaning secrets about that nexus from Oliver, Sr. at Mullen and feeding them to O'Brien? Certainly the suspicion must have crossed Hunt's mind.

It is this three paragraph section, midway through the relatively lengthy article, which forms the basis for this action.

The article was based upon an interview Rosenbaum had with Scott Armstrong, then an investigator for the Senate Select Committee on Presidential Campaign Activities (also known as the "Ervin Committee"). Armstrong who was the principal author of the "Hughes-Rebozo Report," a staff study

of the alleged Hughes-O'Brien connection, is the "Watergate investigator" referred to in the article. After interviewing Armstrong on a Friday, having brief discussions with other members of the Ervin Committee, and reviewing transcripts of some of the testimony before the Committee, Rosenbaum wrote the article over the weekend and sent it to New York where it was published with only minor grammatical changes.

Plaintiff contends that the statements in question are false—that he has never been associated with the CIA nor been a friend of Hunt's. And furthermore, he argues, on the basis of the deposition testimony of Armstrong, that while the statements about him attributed in the article to a "Watergate investigator" in fact came from such an investigator, Rosenbaum, the reporter, knew the investigator's source was Hunt, yet omitted that secondary attribution.

■ On this summary judgment motion, I must resolve all ambiguities and draw all reasonable inferences in plaintiff's favor, placing upon the defendant the burden of demonstrating the absence of any material factual issue genuinely in dispute. *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975); *Goldwater v. Ginzburg,* 414 F.2d 324 (2d Cir. 1969). But I have a special responsibility here to determine if there exists such a genuine dispute because the danger that speech may be chilled by the mere fact of litigation. *Guam Fed. of A.F.T. v. Ysrael,* 492 F.2d 438 (9th Cir.), *cert. denied,* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974); *Meeropol v. Nizer,* 381 F.Supp. 29, 32 (S.D.N.Y.1974). Specifically, the court must make a threshold determination, prior to trial, whether there has been a showing of actual malice. *Bon Air Hotel v. Time, Inc.,* 426 F.2d 858, 864 (5th Cir. 1970); *Wasserman v. Time, Inc.,* 138 U.S.App.D.C. 7, 424 F.2d 920, 922 (Wright, J. concurring), *cert. denied,* 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970). And in making this determination, the granting of summary judgment may well be the "rule" rather than the "excep-

tion". *Guitar v. Westinghouse Elec. Corp.,* 396 F.Supp. 1042, 1053 (S.D.N.Y.1975).

Defendant contends that the statements in question are substantially true, and are not, in any case, defamatory. But the affidavits and depositions submitted establish that there is at least a genuine dispute as to the truth of the statements, and it is arguable, given the current political climate and the sensitive nature of plaintiff's employment, that allegations of CIA involvement are defamatory.

■ The principal question on this motion, however, is whether there is a genuine issue as to "actual malice." Under the *New York Times* standard, to be actionable, the libelous statement must have been made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not," and the malice must be established with convincing clarity. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 285–8, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). As plaintiff appears to acknowledge, at least implicitly, this standard applies here because, under the *Gertz* definition, he is a "public figure." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Currently, he is Executive Director of the American Council of Young Political Leaders, and of the Association of State Democratic Chairmen; he has held positions on the staff of the late Senator Carl Hayden, and on the Democratic National Committee; and he is a former National President of the Young Democrats Club.

Plaintiff relies principally upon the testimony of Armstrong on his deposition that the statements about plaintiff attributed to a "Watergate investigator" were in fact his (Armstrong's) paraphrases of Hunt's testimony before the Committee. In answer to the question whether he ever told Rosenbaum that Oliver was "in any way connected with the CIA," Armstrong responded that "I informed Mr. Rosenbaum that Mr. Hunt, Mr. Howard Hunt had told the Committee that it was his understanding that Mr. R. Spencer Oliver had been employed by an

organization which was financed by the CIA." Similarly, with respect to the other statements about Oliver, Armstrong testified that he had indicated to Rosenbaum that their actual source was Hunt. He stated:

> I don't recall discussing anything that I did not say that Hunt had. said. Hunt was the only source of information that I had for the subject and I would have referred back to Hunt I think fairly regularly.

According to his testimony, he did not tell Rosenbaum whether he himself placed any credence in Hunt's statement. Although Armstrong's account is controverted by Rosenbaum's deposition testimony and affidavit, for the purposes of this motion I must accept it.

In attempting to establish malice, plaintiff proceeds along two lines. First, he argues that regardless of whether the article revealed that Hunt was the source of the "Watergate investigator's" statements, defendant was reckless to rely upon anything he knew to have emanated from Hunt, given his dubious reputation for reliability, the admittedly speculative nature of the subject matter, the indications that certain parties were attempting to protect themselves by exaggerating CIA involvement, and the fact that plaintiff's alleged CIA involvement had been expressly denied by his lawyer and secretary in sworn testimony also given before the Ervin Committee.

■ To establish recklessness, it is not sufficient to show that the reporting in question was speculative or even sloppy. There must be "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967). As defined by the Court in *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968):

> reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigat-

ed before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.

■ Measured by this standard, plaintiff's first argument falls short. The fact that the subject matter was speculative and the statements in question controverted is not sufficient to permit the conclusion that "the defendant in fact entertained serious doubts as to the truth of his publication." Although plaintiff emphasizes Hunt's alleged unreliability as a source, the mere fact of his making a statement, given his prominent position in the Watergate controversy, would be a legitimate news story. Accepting plaintiff's argument would impermissibly stifle investigative reporting into controversial areas such as Watergate where fact and rumor tend to converge in the elusive search for the truth.

■ Plaintiff's second argument is that even if the article would not have been libelous if Armstrong's statements had properly noted Hunt as their source, defendant's failure to so ascribe these statements is sufficient evidence of malice to withstand this motion for summary judgment.

Defendant, citing *Time v. Pape,* 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1970), responds that the alleged omission here is inadequate as a matter of law to demonstrate actual malice. In *Pape,* Time magazine reported as a charge by the United States Commission of Civil Rights an incident of police brutality which the Commission itself, in its report, characterized as the allegations of a civil rights complaint. Notwithstanding the fact that the reporters involved were aware that the Commission attributed its account of the incident to a court complaint, the court held that their failure to include such a secondary attribution in the article was not "'falsification' sufficient in itself to sustain a jury finding of 'actual malice.'" 401 U.S. at 289, 91 S.Ct. at 639. In reaching its decision, the court quoted Madison's statement that

"[s]ome degree of abuse is inseparable from the proper use of everything, and in no instance is this more true than in that of the press." *Id.* at 290, 91 S.Ct. at 639, and concluding that "if 'the freedoms of expression are to have the "breathing space" they "need . . . to survive,"' misstatements of this kind must have the protection of the First and Fourteenth Amendments." *Id.* at 292, 91 S.Ct. at 640, *quoting New York Times Co. v. Sullivan,* 376 U.S. at 271–7, 84 S.Ct. 710 (1964).

A verdict for the plaintiff here would similarly impinge upon the freedom of the press. At most, defendant was guilty of omitting a secondary attribution. Both the reporter and his editor have submitted affidavits to the effect that at the time of publication, they had no doubts about the accuracy of the attribution reported. Although these statements are not dispositive, *St. Amant v. Thompson,* 390 U.S. at 732, 88 S.Ct. 1323, they do place upon plaintiff the burden of producing evidence to establish a genuine question of malice. This plaintiff has not done. Unlike most libel cases, there is no evidence that defendant was motivated by ideological or personal animus against the plaintiff or had some other ulterior motive for omitting the disputed attribution.

It is not enough for plaintiff to claim an error of fact. To repeat the Supreme Court's formulation, he must establish that there has been "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing Co. v. Butts,* 388 U.S. at 155, 87 S.Ct. at 1991. No such showing has been made here. The alleged error is not of the type which by its sheer implausibility should have put the publisher on notice of its falsity, and it is limited to the question of attribution, a shadowy area where the Court has stated that the publisher must not be held liable for all the arguable mistakes of his reporters. *Time Inc. v. Pape, supra.*

To find actual malice, "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained seri-ous doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. at 731, 88 S.Ct. at 1325. Having reviewed the extensive record, I conclude that plaintiff has failed to raise a genuine question as to the existence of such doubts. Accordingly, defendant's motion for summary judgment is granted.

So Ordered.