**CHURCH OF SCIENTOLOGY OF CALIFORNIA, Plaintiff,**

v.

**Gabriel CAZARES, Defendant.**

**No. 76–86 Civ. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

· Aug. 15, 1978.*

Tobias C. Tolzmann, Honolulu, Hawaii, John R. Parkhill, Tampa, Fla., for plaintiff.

Thomas A. Bustin, City Atty., Clearwater, Fla., John T. Allen, Jr., St. Petersburg, Fla., Charles W. Pittman, Tampa, Fla., for defendant.

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KRENTZMAN, District Judge.

### STATEMENT OF THE CASE

This cause is before the Court on defendant's motion for summary judgment and partial summary judgment upon the issues framed in Plaintiff's Third Amended Complaint. The complaint is framed in two counts. Count I is an action under 42 U.S.C.A. § 1983 alleging that defendant under color of state law deprived the plaintiff of its civil rights by prohibiting the Church of Scientology of California from practicing its First Amendment privilege of freedom of religion. The second count is a common-law defamation action [1] with jurisdiction

---

* Actually signed by Judge Krentzman on August 4, 1978 but filed later.

1. Prior complaints filed in this case have asserted that the defamation action was part of

being based upon diversity of citizenship under 28 U.S.C.A. § 1332.

The events out of which this controversy arose occurred during the months of October 1975 through March of 1976 when the plaintiff, Church of Scientology of California, acquired ownership of the Fort Harrison Hotel in downtown Clearwater, Florida. In October of 1975, the hotel was purchased by a corporation known as Southern Land and Development and Leasing Corporation. Because the hotel was a city landmark and was centrally located in the downtown area, speculation arose in the press as to what Southern Land and Development and Leasing Corporation was and to what use the company would make of the Fort Harrison Hotel. Documents were filed in Clearwater City Hall indicating the hotel would be used as a training facility for a large religious organization. Initially, personnel of Southern Land and Development and Leasing Corporation indicated that this organization was known as United Churches of Florida, Inc.

As church organizational employees moved into the hotel, a substantial public controversy arose as to the type of church which would use the facility. Substantial coverage was given to this public event by all news media with extensive coverage by the press. On January 28, 1976, the plaintiff, Church of Scientology of California, announced that it was directly connected with Southern Land and Development and Leasing Corporation and United Churches of Florida and in fact would be utilizing the hotel for functions of the Church of Scientology of California.

During the progress of the news developments, the defendant, Gabriel Cazares, as Mayor of the City of Clearwater, spoke out on numerous occasions on the controversy of who had actually purchased the hotel and what was it to be used for. When it was revealed that the true owner of the hotel was the Church of Scientology of California, the defendant become one of its most outspoken critics.

On February 6, 1976, the Church of Scientology of California filed complaint in this Court asserting that defendant had prohibited it from practicing its religion and had made numerous false and defamatory statements against the Church of Scientology of California. After various motions and rulings by the Court, the pleadings were settled and issues in the case framed by Plaintiff's Third Amended Complaint. Extensive discovery has been taken on these issues.

## THE CIVIL RIGHTS ACTION

The Third Amended Complaint alleges that plaintiff is a non-profit religious organization exclusively engaged in the practice of a religious faith within the meaning of the First Amendment to the United States Constitution. It asserts that the defendant utilizing the power of his office as Mayor of the City of Clearwater, Florida, prohibited plaintiff from exercising the right of freedom of religion by: making false and defamatory remarks, thereby turning the community against plaintiff; inducing clergymen of other faiths to shun association with plaintiff; inducing officials of the City of Clearwater and officials of state government to undertake discriminatory and harassing actions and investigations of plaintiff; inducing civic organizations and other entities to shun association with plaintiff and join public condemnation and ridicule of plaintiff; inducing the news media to refrain from publishing accurate information and/or favorable comments concerning plaintiff and publish only adverse comments and false and derogatory information concerning plaintiff.

The initial inquiry upon motion for summary judgment is whether the plaintiff has standing under the First Amendment to the United States Constitution to claim that as a corporation it has the right to bring a

Count I and brought as part of a civil rights action. Plaintiff's counsel has argued to this effect in prior hearings before the Court. Because the Court finds that defamation actions are not actionable under 42 U.S.C.A. § 1983, Count II is therefore treated by the Court as sounding in common-law defamation with jurisdiction based upon diversity of citizenship.

direct action under the Civil Rights Act, 42 U.S.C.A. § 1983, for actions allegedly depriving it of its right of freedom of religion.

Traditionally, it has been held that First Amendment rights are personal rights accruing to individuals. *Hague v. Committee of Industrial Organization,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). 42 U.S.C.A. § 1983 refers to "persons." Decisions under this act have held that corporations in some circumstances come within the classification of a "person" under the Civil Rights Act. *Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). The question here is whether the plaintiff as a religious corporation is *directly* entitled to protection of the right of freedom of religion under the Civil Rights Act.

There have been cases where, because of the particular facts of the case, a corporation has been held to have sufficient standing to seek protection of the civil rights of its members. In *National Association for the Advancement of Colored People v. State of Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) the "NAACP" brought suit to enjoin the State of Alabama from obtaining the names of "NAACP" members in Alabama State Court. The Alabama court held that the "NAACP" did not have standing to bring the suit and held the corporation in contempt for noncompliance with an order requiring it to produce records revealing the names of its members. After the Supreme Court of Alabama denied certiorari, the "NAACP" sought certiorari in the Supreme Court of the United States. The Court granted the writ holding that the Association had standing to bring the action and protect its members' right to freedom of association, since to hold otherwise would mean that if the individual members were required to bring suit themselves, the whole reason for the suit would be lost since they would have to make their identity known in bringing the litigation.

The Court has examined the record in this case carefully and has found no genuine issue of material fact to exist as to Count I. The Court finds only matters of law to be determined. There are two possible theories under which a civil rights action can be brought. One is a direct action by the corporation itself while the other is a suit to protect the rights of the corporation's members. Under the circumstances of this case as disclosed by all of the facts, it is the judgment of the Court that plaintiff as a corporation does not have standing to assert First Amendment rights of freedom of religion in a civil rights action. The issue raised by the pleadings only involves the first of the two possible theories under which civil rights actions may be brought, i. e., a direct suit for the protection of the corporation's own rights. No class action has been raised by the pleadings, and therefore, no class action is before the Court.

■ The record reveals that neither of the two theories are applicable here. There are no rights that cannot be asserted by an individual or member of the Church of Scientology of California and there is no need for a corporation in this instance to protect the rights of any of its members. The unusual circumstances under which a corporation may sue to protect the rights of its members simply does not exist in this case. Based upon the entire record, there is no deprivation of the First Amendment right of either the Church or its members.

Accordingly, the Court grants defendant's motion for summary judgment as to Count I. The question of awarding to defendant a reasonable attorney's fee under Title 42, U.S.C.A. § 1988 is reserved for further determination by the Court.

## THE DEFAMATION ACTION

Count II of Plaintiff's Third Amended Complaint claims that the defendant maliciously published false and defamatory statements about plaintiff on two occasions during the public controversy surrounding the purchase of the Fort Harrison Hotel by the plaintiff. First, plaintiff claims that during February of 1976, defendant in an interview by the press stated that plaintiff practiced "ruthless tactics," engaged in "questionable schemes" and was disposed to undertake "assaults on business, religious and governmental institutions" and to "sub-

ject Clearwater citizens to untoward actions too bizarre to contemplate" which "would result in a chilling setback to the democratic process with possible national ramifications." These statements were allegedly reported in the local press.

Second, that in March of 1976, defendant stated to a reporter which was later reported in the press that "Scientologists are bringing to the City a helter-skelter world and philosophy," full well appreciating that in so doing the term "helter-skelter" had by reason of a best-selling book and television movie by the same title come into public understanding as descriptive of the policy of a generation of racial strife and indiscriminate mass murder allegedly espoused by the infamous and widely publicized Charles Manson, and intending thereby to convey to the public that plaintiff was dedicated to promotion of a generation of racial strife and indiscriminate mass murder.

■ Initially, the Court finds that this defamation action is not appropriate under Title 42, U.S.C.A. § 1983. *Azar v. Conley,* 456 F.2d 1388 (6th Cir. 1972); *Hopkins v. Wasson,* 329 F.2d 67 (6th Cir. 1964); *People Cab Co. v. Bloom,* 472 F.2d 163 (10th Cir. 1972). Therefore, this defamation action is brought under state law with the Court having jurisdiction by reason of diversity of citizenship under 28 U.S.C.A. § 1332.

The case of *Olan Mills, Inc. of Tenn. v. Enterprise Publishing Co.,* 210 F.2d 895 (5th Cir. 1954) held that defamatory language must be plead with sufficient particularity to allow the Court to perform its function of screening defamatory allegations before they proceed to jury trial. The Court in performing this function has determined that there is no genuine issue of material fact that the statements allegedly made by defendant are not actionable under state or federal law.

■ The Church of Scientology is a public figure within the doctrine of *New York Times Company v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) concerning the public events which surrounded the Church's purchase, occupation and use of the Fort Harrison Hotel. This public event occupied the newspapers in the community for several weeks.

Under the doctrine of *New York Times v. Sullivan,* supra, persons are granted the right to speak out about public figures and public events. It is in effect a qualified privilege in which recovery must be based upon a defamatory statement of fact shown to be untrue and made with actual malice. Indeed, there must be a showing of some predetermined reason for malice.

The applicable law of Florida in regard to defamation is codified in *Palm Beach Newspaper, Inc. v. Early,* 334 So.2d 50 (Fla. 4th D.C.A.1976), cert. den. *Early v. Palm Beach Newspaper, Inc.,* 354 So.2d 351 (1977), in which the Fourth District Court of Appeals held that the principle of *New York Times v. Sullivan,* supra, applies to defamatory actions in Florida:

"This case is governed squarely by *New York Times Company v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny. In the *New York Times* case, the court defined a constitutional privilege intended to free criticism of public officials from the restraints imposed by the common law of defamation:

'The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'

"376 U.S. at 279–80, 84 S.Ct. at 726."

\* \* \* \* \* \*

"The *Gertz* case, supra, also made clear that the defamatory falsehood referred to in the *New York Times* standard refers to a statement of fact as opposed to pure comment or opinion:

'We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the

424

conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.' (418 U.S. 339–40, 94 S.Ct. at 3007).' "

\*    \*    \*    \*    \*    \*

"Suffice it to say that while most of the articles and cartoons can fairly be described as slanted, mean, vicious, and substantially below the level of objectivity that one would expect of responsible journalism, there is no evidence called to our attention which clearly and convincingly demonstrates that a single one of the articles was a false statement of fact made with actual malice as defined in the *New York Times* case. \*  \*  \*"

■ The Court has examined the newspaper articles which contain the alleged defamatory statements of the defendant. When read in their proper context, the statements made constitute merely conclusions or opinions which express ideas which defendant had concerning a public figure. The defendant is entitled under the public figure doctrine to express his ideas or opinions as long as he does not maliciously make a false statement of fact. The entire record and in particular the articles themselves show that the defendant made no malicious, false statement concerning the plaintiff. Therefore, the Court grants plaintiff's motion for summary judgment as to Count II in its entirety.

The Court having found that defendant's motion for summary judgment should be granted as to both counts of Plaintiff's Third Amended Complaint therefore finds that this cause should be dismissed in its entirety. A final judgment will be entered accordingly.