CHURCH OF SCIENTOLOGY OF CALI-
FORNIA and Founding Church of
Scientology of Washington, D. C., Plain-
tiffs,

v.

James SIEGELMAN, Flo Conway, J. B.
Lippincott Company and Morris
Deutsch, Defendants.

No. 79 Civ. 1166 (GLG).

United States District Court,
S. D. New York.

Aug. 27, 1979.

Cohn, Glickstein, Lurie, Ostrin & Lubell, New York City, for plaintiffs by Jonathan W. Lubell and Audrey J. Isaacs, New York City, of counsel.

Clark, Wulf, Levine & Peratis, New York City, for defendants Siegelman and Conway by Melvin L. Wulf, New York City, of counsel.

Lester, Schwab, Katz & Dwyer, New York City, for defendant Lippincott by Patrick A. Lyons, New York City, of counsel.

Rosner & Rosner, New York City, for defendant Deutsch by Jonathan Rosner, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

In this latest libel action brought by the plaintiffs, two branches of the litigious Church of Scientology,[1] motions have been made by the various defendants to dismiss the complaint for failure to state a claim upon which relief may be granted, Fed.R. Civ.P. 12(b)(6), for judgment on the pleadings, Fed.R.Civ.P. 12(c), and for summary judgment, Fed.R.Civ.P. 56. The plaintiffs have cross-moved to dismiss the counterclaims raised against them.

The defendants Siegelman and Conway are the co-authors of the book *Snapping: America's Epidemic of Sudden Personality Change*, which was published by defendant J. B. Lippincott Company in 1978. In this book the authors attempt to explore what they describe as the "phenomenon . . . [of] sudden and drastic alterations of personality," investigating in the process the effects on personality of the techniques used by many of the current religious "cults" and mass-marketed self help therapies. Included among the many groups studied and commented upon was the

---

1. A lexis scan provided this Court of reported decisions in the United States courts in which the Church of Scientology was a party revealed the existence of thirty such cases. *See* Exhibit C, Motion of Defendant Deutsch to Dismiss Complaint, for Judgment on the Pleadings, or for Summary Judgment Dismissing the Complaint.

Church of Scientology.[2] The plaintiffs now contend that included among the passages in the book relating to the Church of Scientology were a number of highly defamatory comments.

Following publication of *Snapping*, and as a result of the interest generated by it, and the topic generally, the defendant Siegelman, along with the defendant Deutsch, a former member of the Church of Scientology, appeared as guests on the syndicated television program "The David Susskind Show." The plaintiffs allege that during the course of the program both of these defendants, in response to certain questions posed, made defamatory comments about the Church.[3] The plaintiffs additionally assert that further defamatory remarks were made by Siegelman and Conway in an interview which was published in *People* magazine.

The plaintiffs in the instant action, the Church of Scientology of California, which is registered in California as a non-profit, religious corporation, and the Founding Church of Scientology of Washington, D.C., which is registered in Washington, D.C. as a non-profit, religious corporation, are part of the worldwide Scientology religion of which the plaintiffs assert there are more than five million members, over three million of them in the United States. Numerous local churches of Scientology are located throughout the United States and in various foreign countries.[4] The plaintiffs assert that their individual churches have been seriously injured by the defendants' alleged defamatory statements, and that as a result their ability to function as a non-profit organization has been seriously impaired. The plaintiffs now seek damages against all of the defendants.

The defendants have alleged a number of grounds upon which the complaint should be dismissed. They first assert, characterizing this action as one concerning statements of religious practice and beliefs, and citing to a long line of Supreme Court cases, that this suit is barred by the free exercise and establishment clauses of the First Amendment.[5]

■ It is well established that "testing in court the truth or falsity of religious beliefs is barred by the First Amendment." *Founding Church of Scientology v. United States*, 133 U.S.App.D.C. 229, 243, 409 F.2d 1146, 1156 (D.C.Cir.1969). See *United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944). Courts must remain neutral in matters of religious doctrine and practice, *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), avoid involvement in the affairs of any religious organization or group, *Wolman v. Walter*, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), and resist the making of any type of ecclesiastical determination, *Presbyterian Church in the United States v. Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969), see *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1975). As has been noted, the First Amendment rests "upon the premise that both religion and government can best work to achieve their lofty aims if each is left free from the other within its respective sphere." *McCollum v. Board of Education*, 333 U.S. 203, 212, 68 S.Ct. 461, 465, 92 L.Ed. 649 (1948).

■ The defendants assert that this doctrine of non-entanglement with religion bars the bringing of a libel action by a religious denomination, such as the Church

---

2. Although the text of *Snapping* covers two-hundred and fifteen pages, only seven and one-half of these deal specifically with the Church of Scientology.

3. Although Mr. Susskind took part in the discussion, neither he, nor any of the television entities, were named as defendants in this action.

4. Apparently all of these local churches are separately incorporated in a state in which they conduct their activities.

5. The First Amendment states that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . ." U.S.Const. Amend. 1.

of Scientology,[6] when the alleged libel relates to the validity of religious beliefs and practices. The Court agrees that where validity of religious beliefs are at issue involvement by the judiciary would be inappropriate. *See Cimijotti v. Paulsen*, 230 F.Supp. 39 (N.D.Iowa, 1964). It does not follow from this, however, that simply because a religious organization is a party to an action that that action should be immediately categorized as a theological dispute. Where the alleged defamation relates to secular matters, and where the issues can be resolved by neutral principals of law, no First Amendment bar exists. As was noted by the Supreme Court in a somewhat different context, "[c]ivil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property." *Presbyterian Church in the United States v. Hull Memorial Presbyterian Church*, 393 U.S. at 449, 89 S.Ct. at 606.

■ In the instant action the alleged defamatory remarks do not, on their face, relate to the validity of religious beliefs or practices. Rather, these statements deal with the alleged debilitating physical and psychological effect certain actions by the Church of Scientology have upon its members. While the Court will be vigilant to avoid any entanglement with theological questions should they arise, at this time no such questions are presented. Accordingly, the Court finds that the free exercise and establishment clauses to the First Amendment are no bar to this action.

■ Having determined that this action is not precluded by the free exercise and establishment clauses, the Court must next turn to more traditional defamation concerns and determine whether the plaintiff churches constitute public figures within the doctrine of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[7]

In *New York Times* it was held that a public official could not recover in defamation absent proof that the defendant made the statement knowing it to be false, or with reckless disregard as to whether it was false or not. This standard of proof has been extended so as to apply to public figures as well as public officials. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Thereafter, the Supreme Court, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974), attempted to define the ways in which a person could become a public figure:

"For the most part those who attain this status have assumed roles of especial

---

**6.** In *Founding Church of Scientology v. United States*, 133 U.S.App.D.C. 299, 409 F.2d 1146 (D.C.Cir.1969), the court held, in view of the plaintiff's having made out a *prima facie* case that Scientology was a religion, and of the defendant's decision not to contest such a characterization, that for the purposes of that action the Church of Scientology was to be treated as a religion entitled to the protection of the free exercise clause. None of the defendants in the instant action have, as of this time, challenged the plaintiffs' description of themselves as religious institutions.

**7.** The defendants have also asserted that, since the plaintiffs are religious associations and not individuals, their rights to compensation for damages is non-existent, and that therefore the action should be dismissed. The Court, however, finds no merit to this claim for, while it is true that the great majority of defamation cases have been brought by individuals to protect their reputation, *see, e. g., Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *Time, Inc. v. Firestone*, 424 U.S. 448, 95

S.Ct. 1557, 43 L.Ed.2d 773 (1976), corporations have also been allowed to maintain such actions. *See, e. g., Friends of Animals, Inc. v. Associated Fur Manufacturers*, 46 N.Y.S.2d 1065, 416 N.Y.S.2d 790, 390 N.E.2d 298 (1979); *Cole Fischer Rogow, Inc. v. Carl Ally, Inc.*, 29 A.D.2d 423, 288 N.Y.S.2d 556 (1st Dep't. 1968). In *Cole Fischer Rogow, Inc., supra* at 427, 288 N.Y.S.2d at 562, it was held that for a corporation to recover in defamation it was necessary that:

"the language used must tend directly to injure plaintiff in its business, profession or trade, and must 'impute to the plaintiff some quality which would be detrimental, or the absence of some quality which is essential to the successful carrying on of his office, profession or trade.'"

Thus, if the plaintiffs, after having established the liability of any or all of the defendants, can meet the *Cole Fischer* test and show direct injury, they would then be entitled to compensation for damages.

prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved."

■ Applying this standard to the facts of the instant action the Court finds the plaintiffs, the Church of Scientology of California, and the Founding Church of Scientology of Washington, D.C., to be public figures. The plaintiffs are component parts of a large world-wide religious movement which claims to have over five million adherents. Unlike the plaintiff in *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976),[8] the instant plaintiffs have taken affirmative steps to attract public attention, and actively seek new members and financial contributions from the general public.[9] *See James v. Gannett*, 40 N.Y.2d 415, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976). As was found in regards to another religious institution (the Gospel Spreading Church) this Court believes the Church of Scientology to be "[a]n established church with substantial congregations . . . [which] seeks to play 'an influential role in ordering society.'" *Gospel Spreading Church v. Johnson Publishing Co.*, 147 U.S.App.D.C. 207, 208, 454 F.2d 1050, 1051 (D.C.Cir.1971). The Church of Scientology has thrust itself onto the public scene, and accordingly should be held to the stringent *New York Times* burden of proof in attempting to make out its case for defamation. *See Church of Scientology of California v. Cazares*, 455 F.Supp. 420 (M.D.Fla. 1978); *Church of Scientology of California v. Dell Publishing Co., Inc.*, 362 F.Supp. 767 (N.D.Cal.1973).[10] *See also Friends of Animals, Inc. v. Associated Fur Manufacturers, Inc.*, 46 N.Y.2d 1065, 416 N.Y.S.2d 790, 390 N.E.2d 298 (1979).

■ Holding the plaintiffs to the *New York Times* burden of proof, however, does not resolve the issue before the Court. The defendants Deutsch and Lippincott[11] (defendants Siegelman and Conway have not joined in this motion) assert that the plaintiffs cannot satisfy the requirement of proving actual malice, and that therefore summary judgment should be granted. They further state that such summary disposition is particularly appropriate, and in fact may be "the 'rule' and not the exception," *Guitar v. Westinghouse Electric Corp.*, 396 F.Supp. 1042, 1053 (S.D.N.Y. 1975), in defamation actions, and is necessary so as to prevent the litigation from having any potentially chilling effect on the exercise of free speech. *See Bon Air Hotel v. Time, Inc.*, 426 F.2d 858, 864 (5th Cir. 1970); *Oliver v. Village Voice, Inc.*, 417 F.Supp. 235 (S.D.N.Y.1976).

The Court is similarly concerned over the damaging effect a frivolous suit could have upon the exercise of First Amendment rights. The propriety of granting summary judgment where actual malice has been alleged, however, has been cast into great doubt by the Supreme Court's recent pronouncement in *Hutchinson v. Proximire*, ── U.S. ──, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). In its decision the Court noted

8. In *Firestone* it was held that a prominent socialite involved in a heavily publicized (with extensive media coverage) divorce action was not a public figure since such publicity had been involuntarily obtained as a result of the plaintiff being "compelled to go to court by the State in order to obtain legal release from the bonds of matrimony." *Id.* at 454, 96 S.Ct. at 965.

9. The plaintiffs, in order to attract both contributors and new adherents to their religion, utilize street-side solicitations, distribute large amounts of printed matter, and send unrequested literature through the mails.

10. In *Dell Publishing Co.* the court, although not directly addressing the public figure issue, applied the *New York Times* actual malice standard in determining the motion before it.

11. The plaintiffs assert that as a result of defects in the defendant Lippincott's moving papers, such papers should not be treated as ones for summary judgment (but simply as additions to the papers moving to dismiss the complaint.) In view of the Court's disposition of this motion, however, there is no need to reach this question.

its doubt as to the validity of the "so-called 'rule' that summary judgment is more appropriately granted in defamation actions than in other types of suits, and stated that "[t]he proof of 'actual malice' calls a defendant's state of mind into question, *New York Times v. Sullivan*, 376 U.S. 264, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and does not readily lend itself to summary disposition."

The plaintiffs have alleged that the defamatory remarks were made with actual malice and that therefore the *New York Times* standard can be met. While the supporting material submitted as to this point is far from convincing, the plaintiffs have managed to place the defendants' state of mind into question, and, in view of the Supreme Court's statement in *Proximire*, the Court does not believe it appropriate to grant summary judgment at this time. This determination is made, however, without prejudice to any future motion being made after additional discovery has been conducted.[12]

■ Finally, the defendants argue that even if the Court does not accept their theoretical arguments as to the free establishment and exercise clauses, or as to the lack of actual malice, it must still dismiss the complaint because the alleged defamatory statements either are not libelous, or constitute expression of opinion. In this regard it has been held that "[u]nder the First Amendment there is no such thing as a false idea," *Gertz v. Robert Welch*, 418 U.S. at 339, 94 S.Ct. at 3007, and thus an opinion, "[h]owever pernicious" cannot be the basis for an action in defamation. *See*

*Buckley v. Littell*, 539 F.2d 882, 889 (2d Cir. 1976). Whether a particular statement is held to constitute a fact or an opinion is "a question of law," *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 381, 397 N.Y.S.2d 943, 950, 366 N.E.2d 1299, 1306 (1977), to be determined by the Court. *See Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974).

The plaintiffs have alleged in their complaint the utterance of twenty-three defamatory statements by the various defendants: ten by Siegelman, Conway and Lippincott arising from the publication of *Snapping*, and contained in count ten; one by Siegelman, contained in count eighteen, and eight by Deutsch, contained in count nineteen, arising from the Susskind interview; and four by Siegelman and Conway arising from the People magazine interview, and contained in count twenty-seven. After careful examination of these statements the Court finds that many of them are clearly either non-libelous, or statements of opinion, and thereby may not be the basis for an action in defamation.

■ Turning first to the allegations against Siegelman, Conway and Lippincott contained in count ten, the Court can find nothing in these statements capable of rising to the level of a malicious false utterance necessary for recovery in defamation. These statements are replete with opinions and conclusions about the methods and practices used by the Church of Scientology and the effect such methods and practices have,[13] recounts of what the authors had been told during the course of their investigation,[14] and some unflattering, though not

---

12. In light of the Court's ultimate determination as to the action against defendants Siegelman, Conway, and Lippincott, *see infra*, any such subsequent motion would, of course, only apply as to defendant Deutsch.

13. *See, e. g.*, ¶ 10(d) of the complaint:

"In our opinion, however, Scientology does not lead people beyond faith to absolute certainty—it leads them to levels of increasingly realistic hallucination. The crude technology of auditing is a direct assult on human feeling and on the individual's ability to distinguish between what he is actually experiencing and what he is only imagining. The bizarre folklore

of Scientology is a tour de force of science fiction. . . . "

14. *See, e. g.*, ¶ 10(B) of the complaint:

"It may also be one of the most powerful religious cults in operation today: The tales that have come out of Scientology are nearly impossible to believe in relation to a religious movement that has accumulated great credibility and respect around the world in less than twenty-five years. It has also gathered an estimated 3.5 million followers. Nevertheless, the reports we have seen and heard in the course of our research, both in the media and in personal interviews with former Scientology high-

defamatory, factual statements.[15] None of these statements go beyond what one would expect to find in a frank discussion of a controversial religious movement, which is a public figure, and thus none of these statements may be the basis for an action in defamation.

Similarly, the alleged utterances in counts eighteen and twenty-seven cannot survive judicial scrutiny. After examining the defamatory language attributed to Siegelman in count eighteen the Court finds it to be a statement of opinion, albeit a rather negative one, by the defendant about the plaintiff, and thus not actionable. As to the alleged defamation contained in count twenty-seven the Court once again finds the statements to be a mix of opinion and unflattering, but non-defamatory, factual statements, none of which is actionable.

■ Turning finally to the alleged defamatory remarks made by defendant Deutsch on the Susskind show, the Court finds that questions exist which preclude disposition at this time. The statements attributed to Deutsch are, unlike the ones attributed to the other defendants, defamatory statements of fact. Deutsch asserts as

a defense both that he believes the statements to be true, and that, in any event, they were all made without actual malice. He also asserts that the statements alleged were not addressed to these plaintiffs but rather to Scientology in general, and thus that these plaintiffs were neither defamed nor damaged. Finally, he claims that the utterances in the complaint were so edited and placed out of context as to be thoroughly misleading. These defenses, however, raise questions of fact which cannot be decided at this time. See Proximire v. Hutchinson, —— U.S. ——, 99 S.Ct. 2675, 61 L.Ed.2d 411.

Accordingly, the motion to dismiss of defendants Siegelman and Conway, and the motion to dismiss of defendant Lippincott, are hereby granted. The motion of defendant Deutsch is, at this time, denied.[16]

■ Having thus disposed of the defendants' motions, the Court next turns its attention to the plaintiffs' motion to dismiss the counterclaims for *prima facie* tort, abuse of process, and conspiracy to deprive the defendants of their constitutional rights,[17] which have been alleged against them.

er-ups, are replete with allegations of psychological devastation, economic exploitation, and personal and legal harassment of former members and journalists who speak out against the cult."

15. *See, e. g.,* ¶ 10(C) of the complaint:

"But for the casual customer choosing among a vast assortment of currently available techniques for self-betterment, the Scientology procedure is well-known, attractive, and inexpensive to begin. The auditing process takes place *in private sessions between subject and* auditor, in which the subject's emotional responses are registered on a device called an E-meter, a kind of crude lie detector. The subject holds the terminals of the E-meter in his hands, and the rise or fall of electrical conductivity in response to the perspiration emitted from the palms is explained as a measure of emotional response to the auditor's course of questioning. The average response registers in the normal range on the meter, with abnormal indicating an overreaction, "uptightness," or sign of trauma on the part of the subject. *The goal of auditing is to bring all the individ-*ual's responses within the range of normal on the E-meter. Using a technique that bears only superficial resemblance to the popular method

of biological regulation known as biofeedback, the individual watches the E-meter and follows precise instructions given by the auditor to learn how to reduce his emotional response to the auditor's questions about past and painful experiences. When the individual has mastered this ability, he becomes eligible for admission to the elite club of Scientology clears."

16. Although the Court feels constrained, in view of the *Proximire* footnote, to deny the motion of defendant Deutsch at this time, should it be ultimately determined that this suit was brought without cause, or for the purpose of harassment, the Court will not hesitate to order the imposition of counsel fees upon the plaintiff. *See Nemeroff v. Abelson,* 469 F.Supp. 630 (S.D.N.Y.1979).

17. The defendant Deutsch had initially also alleged a counterclaim based upon 42 U.S.C. § 1983. Upon the plaintiff's bringing of the instant motion, however, the defendant chose, quite correctly in view of the facts of this case, *to consent to the dismissal of this claim.*

It has been held that in order to be liable for a *prima facie* tort a party must be found guilty of having inflicted intentional harm, resulting in damages, without legal excuse or justification, by an act or series of acts which would otherwise be lawful. *Sommer v. Kaufman*, 59 A.D.2d 843, 399 N.Y.S.2d 7 (1st Dept., 1977). In the instant action, the defendants allege that the plaintiffs, acting with malice and without excuse or justification, brought this lawsuit solely for the purpose of punishing the defendants for their expression of adverse opinions about Scientology, and that as a result they have suffered monetary damages. Proof of such intentional infliction and resulting damage would establish a *prima facie* tort, *Rager v. McCloskey*, 305 N.Y. 75, 111 N.E.2d 214 (1953), and would thereupon shift the burden to the plaintiffs who would have to prove that such conduct was privileged. While the facts before the Court at this stage of the litigation are sparse, it is certainly not clear, contrary to the plaintiffs' claim, that the defendants will not be able to meet their burden of proof. Accordingly, the motion to dismiss this counterclaim is denied.

The defendants' second counterclaim alleges "abuse of process" by the plaintiffs. Abuse of process has been defined as the "misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process." *Board of Education of Farmingdale v. Farmingdale Classroom Teachers Assoc.*, 38 N.Y.2d 397, 400, 380 N.Y.S.2d 635, 639, 343 N.E.2d 278, 280 (1975).[18] The defendants allege that the plaintiffs so abused process when they served each defendant with a summons and complaint for the sole purpose of harassing, discouraging and intimidating them from further criticizing Scientology. Upon close examination, however, the Court believes that while such allegations may succeed in a

suit for malicious prosecution (brought after a successful termination of this litigation), they are insufficient to sustain a cause of action for abuse of process. *Hoppenstein v. Zemek*, 62 A.D.2d 979, 403 N.Y.S.2d 542 (2d Dep't. 1978) (the mere institution of a civil action by summons and complaint is not legally considered such process as is capable of being abused and thereby does not afford a basis for a cause of action for abuse of process). The plaintiffs' motion to dismiss the defendants' counterclaims for abuse of process is granted.

The defendants' final counterclaims allege that the plaintiffs, along with other not-for-profit corporations and organizations affiliated with the Church of Scientology, have engaged in a conspiracy to deprive a class of individuals, of whom the defendants were a part, (described essentially as consisting of critics of the Church of Scientology),[19] of their constitutionally-protected rights in violation of 42 U.S.C. § 1985(3). The plaintiffs have moved to dismiss, asserting that such class was not formed on the basis of any invidious criteria, and thus that the defendants cannot satisfy the prerequisites for maintaining a section 1985 action. *Griffen v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Jacobson v. Organized Crime and Racketeering, etc.*, 544 F.2d 637 (2d Cir.), *cert. denied*, 403 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). Although the Court finds this to be a close issue, we conclude that this vague and amorphous alleged class was not formed on the basis of any invidious criteria. *See Rodgers v. Tolson*, 582 F.2d 315 (4th Cir. 1978) (critics of city commissioners not a valid class); *Harrison v. Brooks*, 519 F.2d 1358 (1st Cir. 1975) (residential property owners who own adjacent residential land illegally crossed by industrial access driveways not a valid class); *Kimble v. D. J. McDuffy, Inc.*, 445

---

18. In this regard it has been noted that even a pure spite motive is insufficient to show abuse of process where process is used only to accomplish the result for which it was created. See Prosser, *Law of Torts*, § 121 (4th ed. 1971).

19. Defendant Deutsch characterized the class as consisting of members and former members, and persons disseminating information about, the Church of Scientology.

F.Supp. 269 (E.D.La.1978) (oil industry workers who had made any prior claim for personal injuries not a valid class).[20] In addition, the defendants have not even made a minimal showing that the two plaintiffs, as opposed to the world-wide Scientology movement in general, have conspired with each other for the purpose of depriving the putative class of their constitutional rights. Accordingly, the plaintiffs' motion to dismiss the defendants' counterclaim based upon 42 U.S.C. § 1985(3) is hereby granted.

#### Conclusion

The action against defendants Siegelman, Conway and Lippincott is hereby dismissed. The motion of defendant Deutsch is denied, without prejudice, however, to a subsequent motion upon completion of additional discovery. The plaintiffs' motion to dismiss all counterclaims is denied in part and granted in part.

The Clerk will enter judgment dismissing the action against defendants, Siegelman, Conway, and Lippincott.

SO ORDERED.

---

**20.** For cases which have found a valid class for § 1985 purposes, *see Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Westberry v. Gilman Paper Co.,* 507 F.2d 206 (5th Cir. 1975), *vacated as moot,* 507 F.2d 215 (5th Cir. 1975); *Selzer v. Berkowitz,* 459 F.Supp. 347 (E.D.N.Y.1978); *Bradley v. Clegg,* 403 F.Supp. 830 (E.D.Wis.1975).