CHURCH OF SCIENTOLOGY OF CALIFORNIA and Founding Church of Scientology of Washington, D. C., Plaintiffs,

v.

James SIEGELMAN, Flo Conway, J. B. Lippincott Company, and Morris Deutsch, Defendants.

No. 79 Civ. 1166 (GLG).

United States District Court, S. D. New York.

July 23, 1982.

Katz & Weinstein, P. C., New York City, for plaintiffs; Sanford M. Katz, Charlene M. Weinstein, New York City, of counsel.

Clark, Wulf & Levine, New York City, for defendants Siegelman and Conway; Melvin L. Wulf, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This lawsuit began in 1979 as a defamation action by the Church of Scientology of California and the Founding Church of Scientology of Washington, D. C. (the Church) against James Siegelman, Flo Conway, J. B. Lippincott Company (Lippincott), and Morris Deutsch. At present, however, all that remains is the counterclaim of Siegelman and Conway (the defendants) against the Church for *prima facie* tort. Before this Court are two motions: the Church's motion for summary judgment dismissing the counterclaim for *prima facie* tort and the defendants' motion to amend their counterclaim by adding a claim for intentional infliction of emotional distress.

Prior to addressing the legal issues raised by these motions, a brief review of the history of this litigation is appropriate. The Church commenced this action on March 6, 1979. It essentially raised three claims: first, that "Snapping: America's Epidemic of Sudden Personality Change" ("Snapping"), a book co-authored by Siegelman and Conway and published by Lippincott, contained a number of highly defamatory comments about the Church; second, that Siegelman and Deutsch made defamatory comments during the course of an interview on "The David Susskind Show;" and finally, that Siegelman and Conway made defamatory remarks in an interview published in "People" magazine. The defendants responded, *inter alia*, with counterclaims for abuse of process and *prima facie* tort, which alleged that the defamation action was frivolous and that the Church commenced it solely to harass the defendants and punish them for expressing adverse opinions about Scientology, and with a counterclaim for conspiracy to deprive the defendants of their constitutional rights.

Most of these claims were short-lived. In an opinion dated August 27, 1979, *Church of Scientology of California v. Siegelman*, 475 F.Supp. 950 (S.D.N.Y.1979), this Court dismissed the complaint against Siegelman, Conway, and Lippincott because the allegedly defamatory statements were either nondefamatory or statements of opinion, which cannot form the basis of an action in defamation. (Although the claim against Deutsch was not dismissed, the parties subsequently settled the matter.) Additionally, this Court dismissed the counterclaims for conspiracy to deprive the defendants of their constitutional rights and abuse of process.[1]

With the lawsuit having terminated in their favor, Siegelman and Conway filed a separate suit for malicious prosecution on

---

1. The counterclaim for abuse of process was dismissed because although "allegations [that the Church served the defendants with process for the sole purpose of harassing them] may succeed in a suit for malicious prosecution (brought after a successful termination of this litigation), they are insufficient to sustain a cause of action for abuse of process." *Church of Scientology of California v. Siegelman, supra,* 475 F.Supp. at 957.

July 17, 1980. (The allegations set forth in the complaint were essentially the same as those underlying the counterclaims for abuse of process and *prima facie* tort.) Shortly thereafter, the Church moved to dismiss the complaint for failure to state a claim because the Church had not interfered with the person or property of the defendants by the use of a provisional remedy in the prior lawsuit—a prerequisite to maintaining a suit for malicious prosecution in New York. *See Kalso Systemet, Inc. v. Jacobs*, 474 F.Supp. 666, 670 (S.D.N.Y.1979). Recognizing the correctness of this position, the defendants filed a Notice of Dismissal pursuant to Fed.R.Civ.P. 41(a)(1).[2]

The present motions were brought this Spring, and oral argument was held on May 28, 1982. The first motion that will be considered is the Church's motion for summary judgment. The Church argues that the counterclaim for *prima facie* tort must be dismissed because it merely realleges the defective claims for abuse of process and malicious prosecution. Moreover, it contends that dismissal is warranted because the defendants have neither pleaded nor suffered any legally cognizable special damages. In opposition to the motion, the defendants have asserted only that there is a material issue of fact concerning the existence of special damages; they have not addressed the Church's first argument.

The second motion is the defendants' motion to amend their counterclaim by adding a claim for intentional infliction of emotional distress—a claim that the defendants' counsel has thus far "overlooked." [3] They argue that leave to amend should be granted in light of the policy of the Federal Rules of Civil Procedure that leave to amend should be freely granted and the fact that, in their view, the Church will not be prejudiced by the amendment. The Church, on the other hand, advances three arguments in opposition to the motion: first, that the proposed counterclaim is time-barred and is not saved by the relation back doctrine of Fed.R.Civ.P. 15(c); second, that the defendants are guilty of laches by waiting nearly three years to bring this motion; and finally, that the proposed counterclaim is legally deficient. For the reasons stated below, the Church's motion for summary judgment is granted, and the defendants' motion to amend is denied.

## I. Motion for Summary Judgment

The Church's motion for summary judgment raises the question whether a cause of action for *prima facie* tort should be dismissed when it simply realleges a defective cause of action for a traditional tort. After reviewing the relevant authorities on the subject, we feel constrained to answer this question affirmatively.

A *prima facie* tort is " 'the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful.' " *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 368 N.E.2d 1230, 1232, 398 N.Y.S.2d 864, 866 (1977) (quoting *Ruza v. Ruza*, 286 A.D. 767, 769, 146 N.Y.S.2d 808, 811 (1st Dep't 1955)). Until recently, it appeared quite clear that a litigant could not maintain an action for *prima facie* tort if it was premised on conduct that could form the basis of a cause of action for a traditional tort. *National Nutritional Foods Association v. Whelan*, 492 F.Supp. 374, 382–83 (S.D.N.Y.1980); *Belsky v. Lowenthal*, 62 A.D.2d 319, 322, 405 N.Y.S.2d 62, 64 (1st Dep't 1978), *aff'd*, 47 N.Y.2d 820, 392 N.E.2d 560, 418 N.Y.S.2d 573 (1979). *Board of Education v. Farmingdale Classroom Teachers Association*, 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975), however, muddied the waters somewhat. In

**2.** At oral argument on these motions, the defendants' counsel admitted that the malicious prosecution cause of action was defective.

**3.** According to the defendants, the *prima facie* tort theory "is not very satisfactory because it requires proof of special damages in very limited areas and does not allow defendants the possibility of recovering a sum of money which can realistically compensate them for the serious harm done to them by the [Church]." Defendants Siegelman and Conway's Memorandum of Law in Support of Their Motion to Amend Their Counterclaim at 2.

that case, the New York Court of Appeals allowed the plaintiff to maintain an action for abuse of process and, in the alternative, for *prima facie* tort. It noted that

> [i]t is our view that a modern system of procedure, one which permits alternative pleading, should not blindly prohibit that pleading in the area of prima facie tort. Of course, double recoveries will not be allowed, and once a traditional tort has been established the allegation with respect to prima facie tort will be rendered academic. Nevertheless there may be instances where the traditional tort cause of action will fail and plaintiff should be permitted to assert this alternative claim.

*Id.* at 406, 343 N.E.2d at 285, 380 N.Y.S.2d at 645.

 Although the precise import of *Farmingdale* on the law of *prima facie* tort is unclear,[4] one thing can be stated with certainty: "[p]rima facie tort [is not] a 'catch-all' alternative for every cause of action [that] cannot stand on its [own] legs." *Belsky v. Lowenthal, supra,* 62 A.D.2d at 323, 405 N.Y.S.2d at 65; *accord, Ann-Margret v. High Society Magazine, Inc.,* 498 F.Supp. 401, 408 (S.D.N.Y.1980); *Kalso Systemet, Inc. v. Jacobs, supra,* 474 F.Supp. at 671. A party will not be allowed to take a defective claim for malicious prosecution, abuse of process, or any other traditional tort and simply recast it as one for *prima facie* tort. *See Ann-Margret v. High Society Magazine, Inc., supra,* 498 F.Supp. at 408; *National Nutritional Foods Association v. Whelan, supra,* 492 F.Supp. at 382–84; *Kalso Systemet, Inc. v. Jacobs, supra,*

474 F.Supp. at 671–72; *Scully v. Genesee Milk Producer's Cooperative, Inc.,* 78 A.D.2d 982, 982, 434 N.Y.S.2d 48, 50 (4th Dep't 1980), *appeal dismissed,* 52 N.Y.2d 969, 419 N.E.2d 875, 437 N.Y.S.2d 972 (1981); *Belsky v. Lowenthal, supra,* 62 A.D.2d at 322–23, 405 N.Y.S.2d at 64–65; *see also Sadowy v. Sony Corp. of America,* 496 F.Supp. 1071, 1076 (S.D.N.Y.1980) (although court noted that "an action for *prima facie* tort will not lie where the allegations fall within the scope of a traditional tort theory," it allowed a claim for *prima facie* tort to be pleaded in the alternative when it was not "merely a [traditional tort] count dressed in other garb"). In *Belsky v. Lowenthal, supra,* for example, the plaintiff based an action for malicious prosecution and *prima facie* tort on essentially the same facts. After upholding the trial court's dismissal of the malicious prosecution claim because there had been no interference with the plaintiff's person or property through the use of a provisional remedy in the prior proceeding, the Appellate Division held that the *prima facie* tort claim must also fall. It noted that

> [i]t would make little sense to hold that plaintiff may not prevail on a cause of action, having failed to establish certain elements, which are essential thereto, and then in the exercise of flexibility, apply a different name to it, and without correcting any of the fatal defects, permit the cause of action (absent a unique quality) to stand.

> \*    \*    \*    \*    \*    \*

> Where the conduct alleged is implicitly or explicitly permitted by traditional doctrine, the catch-all prima facie tort has no useful service to perform. If the conduct is to be proscribed, the straight-forward way to do it is to revise traditional doctrine to punish what has gone unpunished. By contrast, where the complaint's pleading appears to be sufficient to establish a traditional tort, as in *Farmingdale*, the prima facie tort doctrine serves the useful function of providing an alternative rationale for relief in the event some technicality or other unimportant shortcoming prevents relief under the traditional rubric.

> *Id.* at 383–84.

---

4. *National Nutritional Foods Association v. Whelan, supra,* offered this explanation of the holding in *Farmingdale*.

> In *Farmingdale* the Court clearly regarded the facts alleged by plaintiff as constituting a facially sufficient claim of the tort of abuse-of-process. The defendant's conduct there, in other words, was not only within the area intended to be regulated by abuse-of-process doctrine, it was conduct that the doctrine made unlawful. Alternative pleading of prima facie tort in such a case served as a device to enable plaintiff to assert what appeared to be a meritorious claim under a different theory.

> \*    \*    \*    \*    \*    \*

The just and reasonable concept that the law should never suffer an injury and a damage without a remedy has its limitations. To blindly accept this rationale should not be an occasion for setting aside large bodies of case law which have defined our limits, established our guidelines and set forth the essential elements of traditional tort.

*Id.* at 322–23, 405 N.Y.S.2d at 65 (citations omitted).

■ Upholding the defendants' claim for *prima facie* tort would amount to sanctioning its use as a "catch-all" alternative for defective causes of action. As noted above, the gist of the defendants' counterclaim for abuse of process and its cause of action for malicious prosecution, which were both legally deficient, was that the Church instituted the defamation action against the defendants to punish them for expressing adverse opinions about the Church. The *prima facie* tort claim is based on the same factual allegations. Indeed, in the defendants' answer, the facts on which the abuse of process claim was based were simply realleged in the *prima facie* tort claim. *See* Answer of Defendants James Siegelman and Flo Conway ¶¶ 17–19. The only addition was the allegation that the Church undertook these actions maliciously and without justification. *Id.* ¶ 18. This is not enough to avoid the conclusion that the *prima facie* tort claim is simply a defective claim for malicious prosecution or abuse of process "dressed in other garb." Accordingly, the Church's motion for summary judgment dismissing the counterclaim for *prima facie* tort is granted.[5]

## II. Motion to Amend

■ The defendants' motion to amend their counterclaim by adding a claim for intentional infliction of emotional distress is governed by Rule 13(f) of the Federal Rules of Civil Procedure, which provides that "[w]hen a pleader fails to set up a counter-claim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). This rule vests a great deal of discretion in the trial court. Accordingly, it is virtually impossible to state precise guidelines for deciding a Rule 13(f) motion. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1430, at 153 (1971). *See generally id.* § 1430, at 152 (Rule 13(f) is liberally construed). "The usual judicial practice is to examine each case on its facts and to deny leave to amend only when the delay is inexcusable, or when the pleader has displayed a lack of good faith, or when the omitted counterclaim can be left to an independent action or when it is totally lacking in merit." *Id.* § 1430, at 153–55 (footnotes omitted). *See generally Parness v. Lieblich,* 90 F.R.D. 178, 182 (S.D.N.Y.1981) (motion to amend under Rule 15(a) should be decided on "the particular facts and circumstances" of each case). The facts and circumstances of this case lead this Court to the conclusion that granting leave to amend would be inappropriate.

Initially, it should be noted that three years have passed since the filing of the answer, and the defendants have offered no justifiable excuse for the delay. This is not a case in which the discovery of new facts has precipitated an amendment. On the contrary, even though the facts giving rise to the proposed amendment were not contained in the original answer, the defendants were cognizant of them at the time the answer was filed. Proposed Counterclaim ¶ 31; *see Dow Corning Corp. v. General Electric Co.,* 461 F.Supp. 519, 520 (N.D.N.Y. 1978). The only reason now advanced for the delay in seeking to amend is that the defendants' attorney "overlooked" the possibility of utilizing this legal theory. This type of excuse, however, has not fared very well in the courts. As the Sixth Circuit has noted, "[a] misconception of the law is not an excuse for the late presentation of an

---

**5.** In light of our disposition of the Church's motion for summary judgment, we need not consider the Church's argument that the defendants have neither pleaded nor suffered any legally cognizable special damages, although it appears that the pleadings are presently defective.

alternative theory of recovery." *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 971 (6th Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974); *accord, Goss v. Revlon, Inc.,* 548 F.2d 405, 407 (2d Cir. 1976) (leave to amend has been denied when "no reason for . . . extended and undue delay, other than ignorance of the law," has been advanced).

It appears that this unexcused delay, coupled with the probability that the addition of a new claim would lead to a new wave of discovery, is an adequate basis for denying leave to amend. *See Goss v. Revlon, Inc., supra* 548 F.2d at 407; *Ralston-Purina Co. v. Bertie,* 541 F.2d 1363, 1367 (9th Cir. 1976); *Troxel Manufacturing Co. v. Schwinn Bicycle Co., supra,* 489 F.2d at 971; *Dow Corning Corp. v. General Electric Co., supra,* 461 F.Supp. at 520–21. We need not, however, rest the decision entirely on these grounds. Leave to amend is also inappropriate because the proposed counterclaim is legally deficient and fails to state a claim on which relief can be granted. *See Ganguly v. New York State Department of Mental Hygiene-Dunlap Manhattan Psychiatric Center,* 92 F.R.D. 125, 128 (S.D.N.Y. 1981) (leave to amend can be denied when the proposed amendment is legally deficient); *Vulcan Society of Westchester County v. Fire Department of the City of White Plains,* 82 F.R.D. 379, 386–87 (S.D.N.Y.1979) (same).

■ Unquestionably, intentional infliction of emotional distress is a cause of action recognized in New York. *See Fischer v. Maloney,* 43 N.Y.2d 553, 373 N.E.2d 1215, 402 N.Y.S.2d 991 (1978); *Long v. Beneficial Finance Co. of New York,* 39 A.D.2d 11, 330 N.Y.S.2d 664 (4th Dep't 1972); *Halio v. Lurie,* 15 A.D.2d 62, 222 N.Y.S.2d 759 (2d Dep't 1961). Thus, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Fischer v. Maloney, supra,* 43 N.Y.2d at 557, 373 N.E.2d at 1217, 402 N.Y.S.2d at 992–93 (quoting Restatement (Second) of Torts § 46(1) (1965)); *see*

W. Prosser, Handbook of the Law of Torts § 12, at 56 (4th ed. 1971) ("there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind" (footnote omitted)). It is important to remember, however, that not all intentional inflictions of emotional distress are actionable. To state a claim, the defendant's conduct must have been extreme and outrageous. As noted in the Restatement,

> [i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, Comment d (1965); *accord, Fischer v. Maloney, supra,* 43 N.Y.2d at 557, 373 N.E.2d at 1217, 402 N.Y.S. at 993; W. Prosser, *supra,* § 12, at 56; *see O'Rourke v. Pawling Savings Bank,* 80 A.D.2d 847, 847–48, 444 N.Y.S.2d 471, 472 (2d Dep't 1981); *Luciano v. Handcock,* 78 A.D.2d 943, 943–44, 433 N.Y.S.2d 257, 258 (3d Dep't 1980); *Century Apartments, Inc. v. Yalkowsky,* 106 Misc.2d 762, 763–64, 766–67, 435 N.Y.S.2d 627, 628–29, 631 (Civ.Ct.1980).

■ The conduct at issue in this case falls short of the level needed to sustain an action for intentional infliction of mental distress. This conduct, which is delineated in the defendants' proposed counterclaim, can be summarized as follows.[6] First, the

---

**6.** For the purposes of this motion, we will assume that the defendants' allegations are true.

Church told Lippincott, Donald Farber, the defendants' literary agent, and Dell Publishing Company (Dell), which had contracted to publish the paperback edition of "Snapping," that "Snapping" contained false and misleading information. Second, the Church attempted to persuade Lippincott not to publish the book. Third, the Church attempted to persuade Lippincott, Farber, Dell, and the defendants to revise the book. Fourth, the Church threatened Lippincott, Farber, and the defendants with a libel action, knowing it was bound to fail. Fifth, the Church sought permission from Lippincott, Farber, Dell, and the defendants to review the manuscript prior to publication. Sixth, the Church accused the defendants of harboring malice toward the Church. Seventh, the Church distributed "False Corrections Reports," "which supposedly but falsely showed that ["Snapping"] contained false and misleading statements regarding Scientology," Proposed Counterclaim ¶ 25, and "which supposedly but falsely showed that defendants' statements on a David Susskind television program concerning Scientology were false and misleading." *Id.* ¶ 27. Eighth, the Church commenced a frivolous libel action. Ninth, the Church threatened to sue the defendants in a defamation action based on the statements on the Susskind show. Finally, the Church threatened to commence another defama-

tion action after the first one was dismissed. This alleged course of conduct can at most be characterized as annoying. Actions such as threatening to commence a lawsuit and attempting to review a manuscript cannot be viewed as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." [7] Restatement (Second) Torts § 46, Comment d (1965); *see Fischer v. Maloney, supra,* 43 N.Y.2d at 557, 373 N.E.2d at 1217, 402 N.Y. S.2d at 992–93; *O'Rourke v. Pawling Savings Bank, supra,* 80 A.D.2d at 847–48, 444 N.Y.S.2d at 472; *Luciano v. Handcock, supra,* 78 A.D.2d at 943–44, 433 N.Y.S.2d at 258; *Century Apartments, Inc. v. Yalkowsky, supra,* 106 Misc.2d at 763–64, 766–67, 435 N.Y.S.2d at 628–29, 631. Thus, as the defendants can prove no set of facts that will entitle them to prevail on their proposed claim for intentional infliction of mental distress, leave to amend is denied.[8]

SO ORDERED.

---

**7.** Moreover, paragraph 26 of the proposed counterclaim is legally deficient because it merely realleges the facts underlying the counterclaim for abuse of process and the cause of action for malicious prosecution. *Alexander v. Unification Church of America,* 634 F.2d 673, 679 (2d Cir. 1980); *see Fischer v. Maloney,*

*supra,* 43 N.Y.2d at 557–58, 373 N.E.2d at 1217, 402 N.Y.S.2d at 993; pt. I *supra.*

**8.** In light of our disposition of this motion, we need not consider the Church's argument that the proposed counterclaim is time-barred, although the argument may well have merit.