Barry EAVZAN, Plaintiff,

v.

**POLO RALPH LAUREN CORPORATION, Lee Sporn, John P. Quirk, and International Research Group Incorporated, Defendants.**

**No. 97 CIV. 8974(RLC).**

United States District Court, S.D. New York.

Nov. 19, 1998.

Edward R. Epstein, Ft. Lauderdale, FL (Edward R. Epstein, of counsel), for Plaintiffs.

Amster, Rothstein & Ebenstein, New York City (Anthony F. Lo Cicero, Denise A. Lindenauer, of counsel), for Defendants Polo Ralph Lauren Corporation and Lee Sporn.

Yudin & Yudin, New York City (Steven G. Yudin, of counsel), for Defendants John P. Quirk and International Research Group Inc.

### OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Barry Eavzan ("Eavzan") has filed an action alleging malicious prosecution and intentional wrongs. Defendants John P. Quirk and International Research

Group, Inc. move to dismiss pursuant to Rule 12(b)(2), Fed.R.Civ.P., or alternatively pursuant to Rule 12(b)(6), Fed.R.Civ.P. and also move to sanction Eavzan pursuant to Rule 11, Fed. R. Civ. P. Defendants Polo Ralph Lauren Corporation and Lee Sporn move to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., or alternatively, for change of venue pursuant to 28 U.S.C. § 1404(a).

Background

This litigation between plaintiff Barry Eavzan ("Eavzan") and defendants Polo Ralph Lauren Corporation ("Polo") and its associate general counsel Lee Sporn ("Sporn"), and International Research Group, Inc. ("IRG") and its employee John P. Quirk ("Quirk"), grows out of a 1993 Massachusetts lawsuit (the "Massachusetts action"). In the Massachusetts action, Polo accused Eavzan of violating federal and state laws prohibiting trademark infringement and unfair competition. Based on information gathered by IRG, Polo alleged that Eavzan was involved in the manufacture, importation, distribution, and sale of shirts bearing counterfeit Polo trademarks.

Eavzan filed a counterclaim in response, contending that Polo fraudulently orchestrated an elaborate "sting" operation, purportedly to fabricate evidence and entrap Eavzan in counterfeiting activity. Eavzan asserted that under Polo's direction, Quirk solicited him to obtain Polo/Ralph Lauren shirts from manufacturers or suppliers in the Far East. Quirk allegedly invented a fictitious business entity dubbed Luxury Goods, International ("Luxury"), and operated under the pretext that Luxury would re-sell the procured items to its own customers. Eavzan did in fact obtain an Asian factory to manufacture knit shirts, but steadfastly denied that he had ever engaged in counterfeit-related activity.

Both Polo and Eavzan spelled out their respective allegations during a six-day trial in federal court in the District of Massachusetts. At the close of trial, the Massachusetts court provided a Special Verdict Form to the jury with questions designed to streamline deliberation on Polo's trademark claims and Eavzan's counterclaim of fraud. The court also included a question relating to Eavzan's request for attorneys' fees, which asked, "Did Polo initiate this lawsuit in bad faith?" Using the Special Verdict Form, the jury rejected all of the claims presented by both Polo and Eavzan. The jury also determined that Polo did not bring its action in bad faith, and the court denied Eavzan's request for attorney fees.

Eavzan's current litigation in this court is predicated on the same facts that he alleged in his Massachusetts counterclaim. Eavzan now frames his legal claim as malicious prosecution and intentional harm, charging that the defendants concocted their scheme in order to manufacture a baseless lawsuit against him.

Discussion

Personal Jurisdiction

As an initial matter, defendants Quirk and IRG, a resident and corporation of Florida, respectively, argue that as non-domiciliaries they are not subject to the jurisdiction of New York courts and move for dismissal pursuant to Rule 12(b)(2), Fed.R.Civ.P. Personal jurisdiction in a diversity action is determined by the laws of the forum state in which the district court sits, *see United States v. First Nat'l City Bank*, 379 U.S. 378, 381–82, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965), and therefore the argument by Quirk and IRG must be analyzed by applying New York's long-arm statute, Section 302 of the New York Civil Practice Law and Rules ("CPLR"). Because the court has not conducted an evidentiary hearing on the issue, plaintiff need only make a prima facie showing of personal jurisdiction, and the court will construe all pleadings and affidavits in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

■ Eavzan has made a prima facie showing that Quirk and IRG are subject to

personal jurisdiction pursuant to CPLR 302(a)(2), which provides that jurisdiction may be obtained over a non-domiciliary who commits a tortious act within New York. According to Eavzan, New York served as the location for planning and carrying out the defendants' alleged plan to manufacture evidence for a baseless lawsuit, and Eavzan contends that Quirk and IRG were actively engaged in conceiving and carrying out the alleged activities. Although Quirk and IRG dispute the extent of their involvement, the court must resolve doubts in the plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).[1]

## Count I: Malicious Prosecution

The two sets of defendants, Polo and Sporn, and Quirk and IRG, both argue in separate motions that Eavzan is barred from bringing his malicious prosecution claim because his charges were already settled by the prior Massachusetts action. The defendants base their motions on the doctrine of collateral estoppel, or issue preclusion, which serves the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The doctrine is "founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court." *Sassower v. Abrams,* 833 F.Supp. 253, 265 (S.D.N.Y.1993) (Leisure, J.) (quoting *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946)). For collateral estoppel to apply: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity to litigate in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992); *In re PCH Associates,* 949 F.2d 585, 593 (2d Cir.1991); *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986); *Sassower,* 833 F.Supp. at 265.[2]

While the parties do not seriously dispute that Eavzan's prior counterclaim and instant action arise from the same core set of facts, they clash over whether the Massachusetts judgment precludes Eavzan from making out a case for malicious prosecution. Under New York law, a claim of malicious prosecution based on a civil action requires a plaintiff to show: (1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff, and (5) that interfered with the plaintiff's person or property, or imposed some other burden on the plaintiff beyond the ordinary burden of defending a lawsuit. *See*

---

1. Having found CPLR 302(a)(2) adequate, there is no need to address Eavzan's additional arguments in support of the court's jurisdiction.

2. Jurisdiction in the Massachusetts litigation was predicated on a federal question, namely Polo's allegations pursuant to federal trademark law, and therefore this court must apply federal common law to determine the preclusive effect of the prior judgment. *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 41–42 (2d Cir.1986). Even if the prior litigation were predicated on diversity jurisdiction, the court would apply federal law to defendant's collateral estoppel argument in the present diversity action. *See B.N.E. Swedbank S.A. v. Banker,* 791 F.Supp. 1002, 1005–06 (S.D.N.Y.1992) (Sweet, J.) (preclusive effect of a prior judgment in a federal action predicated on diversity jurisdiction is governed by federal law); *Phoenix Canada Oil Co. v. Texaco, Inc.,* 749 F.Supp. 525, 533 (S.D.N.Y.1990) (Conboy, J.) (same); *see also Gelb,* 798 F.2d at 42 (noting in dicta that "federal law should determine the preclusive effect of a federal judgment, without regard to the basis of jurisdiction").

*O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir.1996); *Engel v. CBS, Inc.,* 961 F.Supp. 660, 662 (S.D.N.Y.1997) (Cedarbaum, J.).

■ In the defendants' view, Eavzan's prior counterclaim suggested the defendants' malice by contending that Polo and Quirk "colluded," "swindled," "cheated," "deceived" and "defrauded" in their efforts to entrap him. *See* Quirk Brief at 9 (citing ¶¶ 12–16 of Eavzan's counterclaim in the Massachusetts action). The defendants argue that the jury implicitly reached the issue of malice when it denied Eavzan's charges of fraud.

However, the question of fraud presented by the Special Verdict Form did not require the Massachusetts jury to ascertain the motives of Polo and Quirk, but instead asked, "Did [Eavzan] reasonably rely on a material false statement by Polo to [his] detriment?"[3] Since the jury's answer of "no" did not require a finding of defendants' malice, the failure of Eavzan's counterclaim does not, by itself, preclude Eavzan's current litigation under the doctrine of collateral estoppel.

■ The issue of the defendants' possible malice was addressed more directly by the Massachusetts court's decision on attorneys' fees. Under the Lanham Act, a court may award attorneys' fees in "exceptional cases" to the party which prevails in a trademark action. *See* 15 U.S.C. § 1117(a). The circuits differ on the issue of whether "bad faith" or something less is required to make a case "exceptional." *See Scotch Whisky Ass'n. v. Majestic Distilling Co.,* 958 F.2d 594, 599 (4th Cir.1992) (collecting cases). Although the First Circuit has not yet clearly established its position, the Massachusetts court found it useful to add the question, "Did Polo initiate this action in bad faith?" to the jury's Special Verdict Form, explaining that it "helps me with a potential award and attorneys' fees, whether Polo instituted the lawsuit in bad faith, and that really is more advice to me as to the attorneys' fees question." *See* Pl. Mem. Opp'n. to Quirk & IRG Mot. to Dismiss at 14. (quoting Day 6 transcript of Massachusetts action at 91). The jury determined that Polo did not, in fact, initiate its trademark action in bad faith, and the Massachusetts court summarily denied Eavzan's request for fees.

Eavzan argues against issue preclusion by differentiating between "bad faith" and "malice." In the Massachusetts action, the court instructed the jury that it should find bad faith if Polo brought the action "with knowledge that it had no merit *and* with a dishonest purpose to harass, oppress or intimidate." Pl. Mem. Opp'n. to Quirk & IRG Mot. to Dismiss at 14 (citing Day 6 transcript of Massachusetts action at 88) (emphasis added). By contrast, the Second Circuit has found that in New York, malice does not require an improper intent, but may be inferred from a lack of probable cause. *See Pinsky v. Duncan,* 79 F.3d 306, 313 (2d Cir.1996); *Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir.1994). In other words, malice can be inferred when a plaintiff lacks a "knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville,* 13 F.3d at 629. Eavzan contends that he may be able to establish Polo's malice without showing that Polo possessed an evil or improper purpose.

The Restatement of Judgments counsels that issues should be considered the same where, as here, there is substantial overlap between the evidence and argument to be advanced in the two proceedings; pretrial

**3.** The court instructed the jury that a finding of fraud required five elements: "First, that Mr. Quirk made a false statement of material fact while acting as an agent for Polo... Second, the statement was false at the time it was made; Third, that Mr. Quirk made the statement intending that the defendants rely upon it; Fourth, that the defendants reasonably did so; And fifth, that they suffered damages as a result." Pl. Mem. Opp'n. to Quirk & IRG Mot. to Dismiss, Ex. H at 1.

preparation and discovery in the first trial reasonably could be expected to have embraced the elements of the second; and the claims in both proceedings are closely related. *See* Restatement (Second) of Judgments § 27 cmt. c (1982). Eavzan's pleadings in the prior counterclaim alleged that Polo engaged in a series of activities, or authorized its agents and employees to engage in activities, "knowing that it would later deny them in order to further its plan, scheme, or enterprise to entrap [Eavzan] . . . and falsely accuse [him] of 'counterfeiting.'" *See* Pl. Mem. Opp'n. to Quirk & IRG Mot. to Dismiss, Ex. J at 5. Eavzan now revisits the same alleged deeds, pleading in his current action that defendants' activities constituted a pretext "created by Defendants to falsely accuse Eavzan as a trademark counterfeiter and to fabricate 'evidence' to support Defendant, Polo's, malicious prosecution of a baseless lawsuit." *See* Pl. Mem. Opp'n. to Quirk & IRG Mot. to Dismiss, Ex. A at 4. Despite his precise distinction between malice and bad faith, it is evident that Eavzan proposes to rehearse the same facts and issues that were litigated and decided by three years of discovery, six days of trial, and Eavzan's motions for attorneys' fees in the Massachusetts action. The important principle of judicial economy therefore makes collateral estoppel appropriate in this instance.

Count II: Intentional Wrong

■ In the second count of his complaint, Eavzan "repeats, reiterates and realleges" all of the facts relied upon to make out the malicious prosecution claim, and declares that the facts constitute an "intentional wrong." *See* Pl. Mem. Opp'n. to Quirk & IRG Mot. to Dismiss, Ex. A at 13. The defendants argue that Count II must be dismissed because, as the defendants correctly assert, a litigant is not allowed to recast a defective claim as a

4.  A prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. *See*

prima facie tort. *See Church of Scientology of California v. Siegelman,* 94 F.R.D. 735, 738 (S.D.N.Y.1982).[4] The law in New York is clear: a prima facie tort cannot be used as an alternative for a claim that does not stand on its own. *See Engel,* 961 F.Supp. at 665 (prima facie tort cannot be used to avoid the stringent requirements of a malicious prosecution claim); *Bio-Technology General Corp. v. Genentech, Inc.,* 886 F.Supp. 377, 383 (S.D.N.Y.1995) (Motley, J.) (same).

■ In an attempt to save Count II, Eavzan denies that he has made out a prima facie tort, and relies instead on *Singer v. Jefferies & Co.,* 160 A.D.2d 216, 553 N.Y.S.2d 346 (N.Y.App.Div.1990). In *Singer,* the plaintiff alleged that his trade and reputation were injured by implications that he was involved in insider trading. The *Singer* court found that the facts could not be precisely categorized, but said that "[a]s a matter of policy, justice and fairness, plaintiff should not be precluded from having his day in court simply because the hornbook index does not list the tortious acts herein involved." *Singer,* 553 N.Y.S.2d at 348–49.

As this court has recognized, *Singer* did not create a new catch-all cause of action, but merely held that the plaintiff's allegations could be analogized to various claims and therefore stated a valid cause of action. *See Menaldi v. Pay–Per–View Network, Inc.,* 1998 WL 230994, *2 n. 4 (S.D.N.Y.1998) (Baer, J.). Here, the tort of malicious prosecution adequately embraces Eavzan's allegations that defendants manufactured a baseless lawsuit, making a *Singer* analysis inappropriate. Eavzan's second count is nothing more than an attempt to circumvent the obstacles to his malicious prosecution claim, and the court will not accept Eavzan's reformulation of the same facts into a separate cause of action.

*Church of Scientology of California v. Siegelman,* 94 F.R.D. 735, 737 (S.D.N.Y.1982) (Goettel, J.) (citations omitted).

Sanctions

■ Defendants Quirk and IRG ask the court to impose sanctions on plaintiff Eavzan pursuant to Rule 11, Fed.R.Civ.P., because in their view, Eavzan's claim lacks any sound legal predicate. Rule 11 seeks to discourage "dilatory and abusive litigation tactics and eliminate frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process." *Paganucci v. City of New York,* 993 F.2d 310, 312–12 (2d Cir.1993) (quoting *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 21 (2d Cir.1990)). The applicable test for sanctioning a lawyer is whether a reasonably competent attorney would have acted similarly. *Id.*

The defendants' call for sanctions is out of place. One of the "most difficult problems" in determining whether collateral estoppel applies is delineating the issue on which litigation is foreclosed by a prior action. Restatement (Second) of Judgments § 27 cmt. c (1982). Although the court finds that the Massachusetts action bars the plaintiff from arguing the issue of malice, Eavzan's argument to the contrary is not unreasonable and, while unsuccessful, is not deserving of sanctions.

Conclusion

For the reasons given above, the plaintiff's action is dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P. The court need not address defendants' remaining arguments for dismissal. The request for sanctions by defendants Quirk and IRG is denied.

IT IS SO ORDERED.